# IN THE UNITED STATES COURT FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREGORY D DIXON II | } | |
| PLAINTIFF | } | CASE NO: |
| | } | |
| V. | } | |
| | } | |
| | } | |
| CITY OF DANBURY, | } | JURY TRIAL REQUESTED |
| DEFENDANT | } | |
| | } | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST

**COMES NOW Gregory D Dixon II, hereforth known as the Plaintiff**, files this complaint to enforce **42 U.S.C § 1983,** [1] against the **City of Danbury** (hereforth **known as defendant**) for failing to train their police officers in the Americans with Disabilities Act, particularly dealing with residents with "unseen disabilities." The law states that Defendants "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" in which on November 8th, 2025, the Plaintiff was arrested and held in jail for simply insulting a female and getting into an argument with her in an empty parking lot after she was peering in his car with him sitting in it. The Plaintiff's lawful conduct **caused by his disability**, which, due to the lack of training of the City of Danbury of their officers, the officer "viewed" the Plaintiff's activity as criminal activity and then arrest [the person] for that conduct,[2,3] WHICH **WAS DIRECTLY**

---

1. "deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" **42 U.S.C § 1983**

2. Gohier, 186 F.3d at 1221-22. The court in Gohier considered "arrests" to include arrests, pre-arrest investigations, and "violent confrontations not technically involving an arrest." Id. at 1220 n.2; see also Hainze, 207 F.3d at 800 n.28 (noting the same definition of "arrest").

3. Duggin v. City of Omaha, No. 19-cv-453, 2020 WL 406361, at *1, *5 (D. Neb. Jan. 24, 2020) (denying a motion to dismiss plaintiffs' claim that the City of Omaha "failed to train its employees to handle situations involving mentally ill persons").

---

PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST

**RELATED TO THE PLAINTIFF'S DISABILITY,** is an **unlawful arrest.**"

## i.    INTRODUCTION

1. On November 8th, 2025 after having an argument with an unknown female located in the back of the parking lot at in the parking lot after hours at the Ethan Allen Corporate Store located at 25 Lake Avenue Ext., Danbury, CT, 06811, the Plaintiff was approached by Danbury Police (Hernadez arresting officer) in which the Plaintiff immediately identified he had a disability (behavior disorder). The Plaintiff, was told by officers that "he was arguing and make threats" and was arrested for disturbing the peace and "making threats." The officer arrested the Plaintiff and the Plaintiff's car was towed, in which, the Plaintiff incurred medical expenses and other expenses and NO LONGER FEELS SAFE living in the City of Danbury due to the officer's conduct.

## ii.    STATEMENT OF THE CLAIM

2. To show violations of 42 **U.S.C § 1983,** the Plaintiff argues that his **fourth and fifth amendment rights were violated and therefore will argue a "Monell Claim" and a "Failure to train Claim" against the City of Danbury, for the unlawful arrest which caused the Plaintiff irreparable injury, to include pain and embarrassment, having an arrest on his record for activity that wasn't illegal,  being treated like an animal taken to jail without socks, shoes, short sleeve, and shorts in 30 degree weather, and then put in a cold jail cell, pain and suffering, the Plaintiff's car being towed, incurred medical expenses, being forced to move, and among other damages, all which aren't listed.**

## iii.    JURISDICTION AND VENUE

3. The Honorable Court for the District of Connecticut has jurisdiction to enforce this action under **28 U.S.C. § 1331**, in which this Honorable Court has the authority to enforce violations 42 U.S.C § 1983, and 18 U.S.C § 242.

4. Venue is proper in this chapter under 28 U.S. Code § 1391, in which that all the acts and or omissions in this lawsuit happened within the jurisdiction of this Honorable Court.

PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST

#### iv.    STATEMENT OF THE PARTIES

**5.** The Plaintiff is a disabled veteran, a 45-year-old male that's homeless and has been sleeping in his car in the Danbury area since October 6th, 2025, with what the Plaintiff estimates as at least 17 of the days he lived in Dansbury was in the Ethan Allen Hotel Parking Lot. The Plaintiff has a current mailing address of 4901 Riely Rd Unit 26B Ocean Springs, MS 39564.

6. The City of Danbury is a municipality operating in the State of Connecticut and oversees hiring and firing the Danbury Police Officers. The Corporate Counsel for the municipality is Daniel E Cramer. The service address for the City of Danbury is 155 Deer Hill Avenue Danbury, CT 06810.

#### v.    SERVICE OF NOTICE

**7.** On **November 12th, 2025**, the Defendants were served Notice of Suit to comport with CT Gen Stat § 52-73a, (**Exhibit 1**) and prays this Honorable Court will serve this complaint upon the Defendants on or immediately after **February 12th, 2026,** to comport with Connecticut Statutory Law.

#### vi.    BRIEF STATEMENT OF THE FACTS

8.The Plaintiff has a mental disability (**Exhibit 2**) as described in EVERY STAUTORY LAW in US and Connecticut Code.

9.The Plaintiff made the officers aware of his disability, shortly after they arrived on scene and before they made an arrest on the November 8th, 2025, incident in which this lawsuit was filed.

10.The Plaintiff is homeless and sleeping in his car. On November 8th, 2025, just as he did for the previous 2 weeks, the Plaintiff pulled his car into the back parking lot of 25 Lake Avenue Ext., Danbury, CT, 06811 in the Ethan Allen Hotel parking lot. THERE WERE NO OTHER CARS WITHIN

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

50 OR MORE YARDS OF THE PLAINTIFF **IN EITHER DIRECTION**, as is custom when the Plaintiff parks his car to sleep in these locations.

11. On November 8th, 2025, after the Plaintiff had been parked for 30 minutes or so, the Plaintiff, leaned all the way back in his car, noticed a female walking within feet or inches of his front window, with a dog on the leash.

12. Due to the location where the Plaintiff was parked, he thought this was odd and it startled him. Plaintiff let his seat up and began recording the subject walking, because the subject had TO PASS YARDS OF GRASS TO ALLOW HER DOG TO URINATE, and climb a hill to come look into the Plaintiff's car and he thought that was odd. **(Exhibit 3**)

13. After 10 seconds or less of just "seeing what she was up to" the Plaintiff rolled the window down in the car to ask her what she was doing up there, and the Subject and the Plaintiff exchanged words.

14. Shortly after the Plaintiff drove off (**Exhibit 4,5,6**) and the security guard from the Corporate Offices approached and asked what was going on, and then in conclusion, told the Plaintiff to park in front of the hotel.

15. The Plaintiff never approached the female, never attempted to hit the female with his car and all of this is documented. The entire conversation the Plaintiff had with the Subject and the security officer was recorded and has been produced with this complaint.

16. The Plaintiff got in his car and then went and parked behind the hotel, where he always parks. The female and the security guard returned to where they came from. The Plaintiff turned YouTube back on his cellphone, and about 10-minute time passed.

17. Roughly 10 minutes later, the arresting officer, Officer Hernandez pulled up his patrol vehicle about 10 yards or so from where the Plaintiff was parked and had his hand on his firearm telling the Plaintiff to "let me see your hands."

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

18. The Plaintiff was surprised and startled to see the officer and how he approached him. When the Plaintiff asked why he was approached like this the Plaintiff was told "someone called and said Plaintiff had a gun and said he was going to shoot someone."

19. During the "investigation" the Plaintiff talked to several officers, and finally played the video for Officer Hernadez, who watched the video and placed the Plaintiff under arrest, for "making threats" and "disturbing the peace."

20. The Plaintiff had on no shoes, short sleeve shirt and shorts… He's homeless, sleeping in his car and he was preparing for sleep when the incident happened. The Plaintiff asked the officers to grab his shoes and jacket, but he was transported to jail without shoes or socks in the very cold weather.

21. The Plaintiff got to jail and started having a panic attack, small momentary migraines and chest pains. He asked the bailiff to go to the hospital to be examined.

22. The plaintiff was taken in an ambulance to the Dansbury Emergency Department and was treated for panic disorder (**Exhibit 7**). Immediately following the visit, the Plaintiff was transported back to Dansbury Jail, where he remained until the judge released him without bail, (PTR) on Monday November 10th.

23. The Plaintiff's car was towed, and he had to uber all around town in the shorts and short sleeves he left prison in, until he finally found his car and paid $464 to get his car returned to him.

24. The Plaintiff was yelling and saying insults, but it was due to the women looking in his car and triggering him. However, he didn't break the law, and his behavior was related to his disability. As the Plaintiff left Connecticut this weighed on him heavily and he couldn't sleep once he got to New York. The Plaintiff was depressed.

25. Due to the unlawful arrest and violation of Plaintiff's constitutional rights the situation was "lingering" on the Plaintiff and on November 11th, 2025, shortly after 12 am the was treated at the New York Presbyterian Hospital, near Peekskill, NY. (**Exhibit 8**)

v.     <b>CAUSE OF ACTION</b>

26. The Plaintiff pleads a cause of action for violations **42 U.S.C § 1983,** in which the police officer "misread" the situation due to his "lack f training" in the handling of persons with mental disorders, in that the Plaintiff's lawful behavior caused by his disability, is the direct cause for the unlawful arrest by the "inappropriately trained" Danbury Police Officer. The Officer's lack of training has caused the Plaintiff irreparable mental and emotional injury, in which the Plaintiff suffered damages to include initial and future medical. Furthermore under, **18 U.S.C § 242** due to being constantly "placed in unjustified fear" of arrest or worse which is "depriving the Plaintiff of his rights", the Plaintiff has suffered loss for moving and relocation expenses, in which "he feels unsafe," which is causing economical and noneconomical damages to the Plaintiff, and is currently homeless, sleeping in his car in New York, because he is afraid to return to Danbury due to the harassment.

27. The Plaintiff will litigate his cause of action for 42 U.S.C § 1983 under the following conditions**:**

    **A. Fifth and Fourteenth Amendment Violation**
    **B. Monell "Doctrine"**
    **C. Failure to train**

vi.     <b><u>LEGAL GROUNDS</u></b>

28. The Plaintiff is not alleging "criminal conduct, fraud, actual malice, or willful misconduct" as stated in CGS § 52-557n(a)(2), as amended by PA 23-83. The Plaintiff is stating that the conduct of the officer, "performed under the color of law", is a product of the officer's training, and not that the "officer went rouge" in that this is "an ordinary custom or practice" when handling someone with a disability.

---

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

29. CT Gen Stat § 52-73a allows the Plaintiff to sue the City of Danbury, in which the officers were thought to be acting under the color of state and or local law.

30. The Plaintiff seeks enforcement of 42 **U.S.C § 1983** in which, Officer Hernadez making the arrest, "lacked training and discernment" to recognize that the Plaintiff's behavior, by making insults "to someone he perceived as a threat", was in NO WAY a violation of state and or local law and the arrest "was aggressive behavior" against a disabled veteran.

31. The City of Danbury, IN NO WAY, can claim immunity under the Connecticut Statutes. Plaintiff's injuries, the embarrassment and emotional distress, having his car towed and the depression and the emergency room visits traumatized the Plaintiff, in which the Plaintiff holds the City of Danbury **vicariously libel for the actions of their officers.** Furthermore, Plaintiff argues that the city MUST BE SUED IN THE INTREST OF JUSTICE.

32. "Though not always explicit, long-standing associations between criminality and disability—or centuries-old practices of responding punitively to disability in public or to persons in need of mental-health treatment or in crisis—warrant broader legal protections for disabled people as a class." [4] **The officers "publicly admitting" that they "were not trained" in not only discrimination law, but handling those with discriminations, is a broader problem in America and can and do cause serious harm and death.**

**33.** Courts should recognize that "by reason of disability" should be interpreted with an eye toward the long-standing associations between criminality and disability—one that incorporates

---

4. **Gross v. FBL Financial Services, Inc. calls into question whether the motivating-factor standard applies in the ADA context. 557 U.S. 167, 175-76 (2009); see supra note 306.**

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

view of disability discrimination rooted not only in medical, diagnostic understandings of disability but also in social meanings, stereotypes, and myths." [5] In that the Plaintiff was attempting to warn the officer that Plaintiff's conduct was due to his disability and not "criminality", the lack of training is the Disparate Impact to the Plaintiff in that he experienced discrimination from the officer rather that was the officer's intention or not.

### vii.    ELEMENTS OF UNLAWFUL ARREST

34. The Plaintiff is arguing the "wrongful-arrest theory" when officer Hernandez **misperceive lawful conduct caused by [an arrestee's] disability as criminal activity and then arrest [that person] for that conduct."** [6]

35. "The prototypical example of wrongful-arrest theory under Title II involves misperceptions of physiological reactions by law enforcement. [7] For example, when officers arrest a deaf man for allegedly resisting arrest when he does not heed an officer's command that he cannot hear, or arrest a sober man for drunk driving because they interpret slurred speech and an unsteady gait as drunkenness"

36. The Plaintiff's entire argument centers around these facts, in that he was "basically arrested

---

5. **Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (noting the choice between a "deliberate indifference" or "discriminatory animus" standard before "determin[ing] that the deliberate indifference standard applies"); D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014) (requiring that the plaintiff make a showing of deliberate indifference); Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011) (same).**

6. **Gohier v. Enright, 186 F.3d 1216, 1221-22 (10th Cir. 1999); see also Roberts v. City of Omaha, 723 F.3d 966, 973 (8th Cir. 2013) (describing the wrongful-arrest theory as when officers "unreasonably mistake an innocent, disability-related behavior for criminal conduct").**

7. **See, e.g., Sacchetti v. Gallaudet Univ., 181 F. Supp. 3d 107, 115-16, 127 (D.D.C. 2016); Lewis v. Truitt, 960 F. Supp. 175, 176-79 (S.D. Ind. 1997); see also Amiel Fields-Meyer, When Police Officers Don't Know About the ADA, ATLANTIC (Sept. 26, 2017), https://perma.cc/8H29-S99W; Talila A. Lewis, Police Brutality and Deaf People, ACLU (Mar. 21, 2014, 1:13 PM), https://perma.cc/3ZPN-DTNK.**

PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST

because of his behavior disorder" in which, Plaintiff is currently on Social Security Disability Insurance due to him "not being able to get along with people." It is appropriate, for the sake of justice, to argue that his disability would definitely apply in this situation as well.

### viii.    VIOLATIONS OF THE PLAINTIFF'S FIFTH AND FOURTEETH AMENDMENT RIGHTS, MONELL AND FAILURE TO TRAIN CLAIMS

37. To show violations of 42 **U.S.C § 1983,** the Plaintiff argues that his **fifth amendment rights were violated and therefore will argue a "Monell Claim"** [8] **and a "Failure to train Claim" against the City of Danbury, which caused the Plaintiff injury.**

**Fifth Amendment Violation**

38. "The Fifth Amendment has an explicit requirement that the Federal Government not deprive individuals of "life, liberty, or property," without due process of the law and an implicit guarantee that each person receives equal protection of the laws." [9]

39. The Plaintiff argues that he was arrested for 1. Disturbing the peace and 2. Making threats, in which, the Plaintiff has provided video evidence to the court that during THIS ENTIRE SITUATION IN WHICH HE RECORDED, he 1. Made no threats, and 2. The Plaintiff asks the Court, how can the Plaintiff be charged with disturbing the peace when someone walks up to his car and stares at it, which causes an argument between 2 people in an empty parking lot? The plaintiff is not guilty of the crimes he was charged with, and it is clearly seen that his arrest was unlawful.

---

8. **Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978)**
9. **"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const., Art. I, § 1, cl. 5.**

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

**Monell Claim**

40. The Plaintiff will argue a "Monell Claim" in pursuant to section 1983, and will look to prove

the following elements:

> **Deprivation of federal right**: The plaintiff must show that their constitutional rights were
> violated.
> **Governmental action**: The violation must be linked to a municipal policy or custom.
> **Deliberate indifference**: The policy or custom must reflect the municipality's fault,
> indicating a failure to train or supervise adequately.
> **Moving force**: The municipal action must be the direct cause of the federal violations.

**Deprived of 4th and 5th amendment rights with unlawful arrest**

41. The Plaintiff will show damages in that while on the municipality's property, he was being

**deprived** of his fourth and fifth amendment rights.[10] The **governmental action** was directly

linked to the **customs and our** policies in which the department operates, and it is the

municipality's responsibility to hire and train their officers, which shows **deliberate**

**indifference**.

**Failing to train officers in handling of disabled citizens is the moving force**

42. The municipal CONTINUING TO FAIL TO TRAIN IT'S OFFICERS is the "**moving force**"

and the "direct cause" of the Plaintiff's injuries.

**Failure to train claim**

43. The Plaintiff argues that THE HISTORY of the "lack of proper policing" Dansbury is

irrelevant to prove THIS Monell Claim, BECAUSE THE OFFICERS OPENLY ADMITTED

THEY WERE NOT TRAINED ON HOW TO HANDLE RESIDENTS WITH DISABILITIES.

---

10. **"The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property,
without due process of law." Convictions based on evidence obtained by methods that are "so brutal and so
offensive to human dignity" that they "shoc[k] the conscience" violate the Due Process**
Clause. *Rochin* v. *California*, 342 U. S. 165, 172, 174 (1952) (overturning conviction based on evidence
obtained by involuntary stomach pumping)."  Chavez v. Martinez, 538 U.S. 760 (2003)

PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST

Furthermore, the Plaintiff will argue in further litigation and prove in discovery, that Danbury Police Department has a custom of "over policing" in situations in which is an error in police policy, such as with not training officers in disability law.

44. The Plaintiff can list "a litany" of things in which the training of the police officers could be better, to include the way the officers handle disabled people. The fact that the officers, after Plaintiff told them about it SEVERAL TIMES PRIOR TO THE ARREST THAT HE HAD A BEHAVIOR DISORDER, the fact that the officers aren't TRAINED in how to handle residents with the Plaintiff's condition, is an injustice to ALL DANSBURY RESIDENTS who have unseen disabilities.

### ix.    <u>LIABILITY OF THE DEFENDANT</u>

45. The defendant's conduct is an actual AND proximate cause of a plaintiff's injury, due to a policy or customs in which the officers are trained. The officers harassing the Plaintiff and depriving him of his rights caused the Plaintiff injury and therefore is the actionable cause of the constitutional violation. [11]

**Actual Cause**

46. The Plaintiff's injury would not have occurred 'but for' that policy or custom, and the officers conduct has a sufficient connection to the result. Dansbury Police Department's history of "not training police officers correctly" (in which in later pleadings the Plaintiff will show the errors in

---

11. "It is only when the `execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under 1983." Springfield v. Kibbe, 480 U.S. 257, 267 (1987) (O'CONNOR, J., dissenting) (quoting Monell, supra, at 694).

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

their training) [12] and those customs and policies are leading to the municipality to "incorrectly trained" officers, to inflict "unlawful arrests" on residents with disabilities. If but for 1 officer's actions, the Plaintiff would argue that "that officer's actions" is the actual cause of the Plaintiff's loss and damages. However, due to the custom of harassment, the Plaintiff argues that the failure to train is the "actual cause" of the Plaintiff's loss and or damages.

47. To demonstrate, "but for" Officer Hernadez understanding the protections provided and reasonably expected by the Plaintiff, of the Americans with Disabilities Act, Officer Hernandez would have understood that the Plaintiff's behavior was lawful, in light of his disability.

48. The Plaintiff, after the argument with the subject of the dispute, and after the conversation with the security guard, returned to his previous location for up to 10 minutes before law enforcement arrived, and in no way was a threat to himself or anyone else when the police arrived. Officer Hernadez **being trained**, to handle residents with disabilities, he could have recognized this, and this is the "moving force" [13] to why the Plaintiff was unlawfully detained.

**Proximate Cause**

49. The City of Dansbury, "should be able to reasonably foresee" that not correctly training officers could and does cause injury (from the various lawsuits they have filed they should be

---

12. "Under *Monell*, a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) (citing *Harper*, 533 F.3d at 1026).

13. Regardless of what theory the plaintiff employs to establish municipal liability— policy, custom, or failure to train— the plaintiff must establish that the policy or custom is the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). To meet the moving force requirement, "the plaintiff must show both causation-in-fact and proximate causation." *Gravelet-Blondin*, 728 F.3d at 1096.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

able to see). The Defendants owed the Plaintiff a duty of care and failed in that duty. The "duty" owed, is reasonable care and proper training to adhere to the law.

50. Furthermore, the Plaintiff can argue as well, due to the "practices and or customs" of the municipality, the officer who perpetrated the illegal arrest against the Plaintiff is "used" to performing incorrect police practices. However, if the municipality ONCE AGAIN, PROPERLY TRAINED IT'S OFFICERS then the Plaintiff wouldn't be New York, nor would he have suffered his panic attack, nor any other of the irreparable damages and loss that the Plaintiff did suffer.

51. **WHEREFORE ALL PREMESIS CONSIDERED, the Plaintiff,** who is disabled and a veteran, suffered shameful humiliation of being arrested, and the Plaintiff had not been previously arrested or committed any "noteworthy" crimes in over 15 years. The Plaintiff was sitting in his car in the same location he had been in for more than 17 consecutive nights, when the unknown female approached his vehicle, staring into his car from a proximity in a way that startled the Plaintiff. The Plaintiff, saying mean and ugly things were not unlawful, and has presented evidence OF THE ENTIRE INTERACTION to show that he never made any threats. The Plaintiff, being taken to jail in shorts, a short sleeve shirt, with no socks and shoes in 30% weather when Plaintiff asked for his shoes and a jacket, is a violation of common decency and lacks a professionalism beneath ANY AMERICAN Police Department, and being that the Plaintiff suffers from mental disabilities, this caused him to have a panic attack in the cold jail cell, after being arrested for "simply having an argument." The City of Danbury owes a duty to the Plaintiff and their residents to "train police officers in a way that does not cause harm to society", in which the Plaintiff's car was towed and Plaintiff suffered financial medical loss as well, due to having to visit the hospital, going from the night he was arrested to the early

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

morning hours, due to insomnia and being in a depressed, anxious state. Due to the City of Danbury failing to train their officers in disability law and other policies, the Plaintiff prays the court will order the City of Danbury to 1. **Train their officers in the ADA** and or **how to work with and or handle disabled citizens**, and 2. Order the City of Danbury, to pay the Plaintiff for extraordinary loss and mental and emotional distress, economic and noneconomic damages and irreparable harm in the amount of **$127,000 USD, or an amount this Honorable Court finds just, plus all equitable court cost and court fees.**

Respectfully submitted,

November 17th, 2025

Gregory D Dixon II, Plaintiff Pro Se
4901 Riely Rd
Unit 26B
Ocean Springs, MS 39564
amelioratelegal@gmail.com
629-257-4018

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES DUE TO UNLAWFUL ARREST**

# IN THE UNITED STATES COURT FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **GREGORY D DIXON II** | } | |
| **PLAINTIFF** | } | **CASE NO:** |
| | } | |
| **V.** | } | |
| | } | |
| | } | |
| **CITY OF DANBURY,** | } | **JURY TRIAL REQUESTED** |
| **DEFENDANT** | } | |
| | } | |

### PLAINTIFF'S RULE 902 AFFIDAVIT

I, Gregory D Dixon II, on this 18th day of November 2025, do hereby solemnly swear, attest and say as follows:

1. I am the owner of the 4 videos presented as evidence (Exhibit 3, Exhibit 4, Exhibit 5 and Exhibit 6th) and I did indeed record the incident which contains the entire conversation between myself the Plaintiff, the "Subject" the Plaintiff had the encounter with, and the security guard for the corporate offices.

2. I am the owner of the documents presented as evidence (Exhibit 1, Exhibit 2, and Exhibit 7 and Exhibit 8) which are indeed true and original copies of the true and original documents that are in Plaintiff's possession.

3. Furthermore, the videos are "records" in which I may not "regularly obtain" however, it is common practice for people to record videos such as these on their phones.

4. The videos submitted were taken and are actual events and or conversations of what happened, exact replicas of the original video.

5. The documents submitted were taken and are actual events and or conversations of what happened, exact replicas of the original video.

6. The attached records (8 Exhibits) are true and accurate copies of the records described in the Plaintiff's complaint.

7. The attached records were: Made at or near the time of the occurrence of matters set forth by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters.

**I, Gregory D Dixon II, being of sound mind do hereby solemnly swear that Exhibits 1-8 are the true and exact copies of originals, Exhibits 1,2,7 and 8 being true and original photocopies, and Exhibits 3,4,5, and 6 being true and originals digital copies of a video OF THE ENTIRE INCIDENT, taken by video recording by the Plaintiff on his cell phone.**

November 18th, 2025

Gregory D Dixon II
4901 Rich Rd
Unit 26B
Ocean Springs, MS 39564
629-257-4018
amelioratelegal@gmail.com

November 18, 2025          2

**PLAINTIFF'S RULE 902 AFFIDAVIT**

*Exhibit 1*

# IN THE UNITED STATES COURT FOR THE
## DISTRICT OF CONNECTICUT

GREGORY D DIXON II           }
           PLAINTIFF      }        CASE NO:
                        }
   V.                      }
                        }
                        }
CITY OF DANBURY,         }      JURY TRIAL REQUESTED
           DEFENDANT    }
                        }

## NOTICE OF SUIT

**Gregory D Dixon II, hereforth known as the Plaintiff**, files this notice to enforce **42 U.S.C § 1983,** [1] **against the City of Danbury** (hereforth **known as defendant**) for failing to train their police officers in the Americans with Disabilities Act, particularly dealing with residents with "unseen disabilities." The law states that Defendants "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" in which on November 8th, 2025 after having an argument with an unknown female located in the back of the parking lot at in the parking lot after hours at the Ethan Allen Corporate Store located at 25 Lake Avenue Ext., Danbury, CT, 06811, the Plaintiff was approached by Danbury Police (Hernadez arresting officer) in which the Plaintiff immediately identified he had a disability (behavior disorder). The Plaintiff, was told by officers that "he was arguing and make threats" and was arrested for disturbing the peace and "making threats." The officer arrested the Plaintiff and the Plaintiff's car was towed, in which, the Plaintiff incurred medical expenses and other expenses and NO LONGER FEELS SAFE living in the City of Danbury due to the officer's conduct. The Plaintiff's lawful conduct caused by his disability, which, due to the lack of training of the

---

1."deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" **42 U.S.C § 1983**

City of Danbury of their officers, the officer "viewed" the Plaintiff's activity as criminal activity and then arrest [the person] for that conduct,[2, 3] WHICH **WAS DIRECTLY RELATED TO THE PLAINTIFF'S DISABILITY,** is an <u>**unlawful arrest.**</u>"

### i.    INTRODUCTION

The Plaintiff was told on multiple occasions by the officers, that THEY WERE NOT trained in the Americans with Disabilities Act, in which is evident to the Plaintiff. The Plaintiff's behavior was caused by his disability, and therefore his behavior is **protected** by the Americans with Disabilities Act. Making an arrest of a disabled veteran for having a simple argument in an EMPTY PARKING LOT is NOT disturbing the peace. Furthermore, the Plaintiff doesn't recall making any threats, just insults DUE TO HIS DISABILITY, which isn't illegal anyway.

To show violations of 42 **U.S.C § 1983,** the Plaintiff argues that his **f**ourth am**endment rights were violated and therefore will argue a "Monell Claim" and a "Failure to train Claim" against the City of Danbury, for the unlawful arrest which caused the Plaintiff injury.**

On <u>**November 12th, 2025**</u>, the Defendants were served Notice of Suit to comport with CT Gen Stat § 52-73a, and prays this Honorable Court will **serve this complaint upon the Defendants on or immediately** <u>**after February 12th, 2025,**</u> to comport with Connecticut Statutory Law.

---

2. Gohier, 186 F.3d at 1221-22. The court in Gohier considered "arrests" to include arrests, pre-arrest investigations, and "violent confrontations not technically involving an arrest." Id. at 1220 n.2; see also Hainze, 207 F.3d at 800 n.28 (noting the same definition of "arrest").

3. Duggin v. City of Omaha, No. 19-cv-453, 2020 WL 406361, at *1, *5 (D. Neb. Jan. 24, 2020) (denying a motion to dismiss plaintiffs' claim that the City of Omaha "failed to train its employees to handle situations involving mentally ill persons").

The Plaintiff WAS ARRESTED IN A SHORT SLEEVE SHIRT AND SHORTS,
WITHOUT SOCKS BAREFOOTED, AND WAS TAKEN TO JAIL LIKE THIS ALTHOUGH
THE PLAINTIFF ASKED REPETEDLY TO BE ALLOWED TO BRING A JACKET. This
along with his treatment when he arrived at jail, caused immense stress on the disabled Plaintiff,
in which he "went in a state of panic" and was taken in an ambulance to the Dansbury
Emergency Department.

The Plaintiff, following his release from jail on November 10th, 2025, went to pick his car
up from the impound, then immediately fled Connecticut because he didn't no longer feel safe.
The Plaintiff was severely depressed and was treated at the New York Presbyterian Hospital, near
Peekskill, NY.

## ii.     BRIEF STATEMENT OF THE FACTS

1. The Plaintiff has a mental disability (**Exhibit 1**) as described in EVERY STAUTORY
   LAW in US and Connecticut Code.
2. The Plaintiff made the officers aware of his disability, shortly after they arrived on scene
   and before they made an arrest on the November 8th, 2025, incident in which this lawsuit
   was filed.
3. The Plaintiff is homeless and sleeping in his car. On November 8th, 2025, just as he did
   for the previous 2 weeks, the Plaintiff pulled his car into the back parking lot of 25 Lake
   Avenue Ext., Danbury, CT, 06811 in the Ethan Allen Hotel parking lot. THERE WERE NO
   OTHER CARS WITHIN 20 OR MORE YARDS OF THE PLAINTIFF IN EITHER
   DIRECTION, as is custom when the Plaintiff parks his car to sleep in these locations.
4. On November 8th, 2025, after the Plaintiff had been parked for 30 minutes or so, the Plaintiff, leaned
   all the way back in his car, noticed a female walking within feet or inches of his front window, with a
   dog on the leash.
5. Due to the location of where the Plaintiff was parked, he thought this was odd and it startled him.
   Plaintiff let his seat up and began recording the subject walking, because the subject had TO PASS
   YARDS OF GRASS TO ALLOW HER DOG TO URINATE, and climb a hill to come look into
   the Plaintiff's car and he thought that was odd. (**Exhibit 2**)
6. After 10 seconds or less of just "seeing what she was up to" the Plaintiff rolled the window down in
   the car to ask her what she was doing up there, and the subject and the Plaintiff exchanged words.

7.  Shortly after the Plaintiff drove off (**Exhibit 3,4,5**) and the security guard from the Corporate Offices approached and asked what was going on, and then in conclusion, told the Plaintiff to park in the front of the hotel.

8.  The Plaintiff never approached the female, never attempted to hit the female with his car and all of this is documented. The entire conversation the Plaintiff had with the subject and the security officer is documented.

9.  The Plaintiff got in his car and then went and parked behind the hotel, where he always parks. The female and the security guard returned to where they came from. The Plaintiff turned YouTube on his cellphone, and about 10-minute time passed.

10. The arresting officer, Officer Hernandez pulled up his patrol vehicle about 10 yards or so from where the Plaintiff was parked and had his hand on his firearm telling the Plaintiff to "let me see your hands."

11. The Plaintiff was surprised and startled to see the officer and how he approached him. When the Plaintiff asked why he was approached like this the Plaintiff was told "someone called and said Plaintiff had a gun and said he was going to shoot someone."

12. During the "investigation" the Plaintiff talked to several officers, and finally played the video for Officer Hernadez, who watched the video and placed the Plaintiff under arrest, for "making threats" and "disturbing the peace."

13. The Plaintiff had on no shoes, short sleeve shirt and shorts… He's homeless, sleeping in his car and he was preparing for sleep when the incident happened. The Plaintiff asked the officers to grab his shoes and jacket, but he was transported to jail without shoes or socks in the very cold weather.

14. The Plaintiff got to jail and started having a panic attack, small momentary migraines and chest pains. He asked the bailiff to go to the hospital to be examined.

15. The plaintiff was taken in an ambulance to the Dansbury Emergency Department and was treated for panic disorder (**Exhibit 6**). Immediately following the visit, the Plaintiff was transported back to Dansbury Jail, where he remained until the judge released him without bail, (PTR) on Monday November 10th.

16. The Plaintiff's car was towed, and he had to uber all around town in the shorts and short sleeves he left prison in, until he finally found his car and paid $464 to get his car returned to him.

17. The Plaintiff was yelling and saying insults, but it was due to the women looking in his car and triggering him. However, he didn't break the law, and his behavior was related to his disability. As the Plaintiff left Connecticut this weighed on him heavily and he couldn't sleep once he got to New York. The Plaintiff was depressed.

18. Due to the unlawful arrest and violation of Plaintiff's constitutional rights the situation was "lingering" on the Plaintiff and on November 11th, 2025, shortly after 12 am the was treated at the New York Presbyterian Hospital, near Peekskill, NY. (**Exhibit 7**)

### iii.    PRAYER

The Plaintiff is not going to litigate the whole case in this notice; however, the Plaintiff ask Counsel and ask the Court, HOW CAN THE POLICE, PROPERLY POLICE ALL THE CITIZENS IN THE COMMUNITY IF THEY ARE NOT TRAINED IN DISABILITY LAW? FURTHERMORE, how is the Plaintiff guilty of disturbing the peace if he and the subject were the only 2 people in the parking lot, and the Plaintiff ONLY addressed her because she came looking in his car?

The Plaintiff as well was arrested for "making threats" in which, the Plaintiff would like TO EXAMINE ANY "EVIDENCE" THAT CONTAINS HIM MAKING A THREAT AGAINST THE SUBJECT'S LIFE ON NOVEMBER 8TH. Therefore, if the Plaintiff WASN'T "disturbing the peace" and didn't make any threats, then how was the arrest lawful? Furthermore, Plaintiff argues, HIS BEHAVIOR WAS RELATED TO HIS DISBILITY WHICH IS PROTECTED BY FEDERAL LAW, in the sense that HE WASN'T committing ANY crimes, and the arrest was excessive due to the police arriving OVER 20 MINUTES after the "altercation" and the Plaintiff simply returned to his spot and returned to watching YouTube. Plaintiff argues that he could have simply been told to leave or AT WORSE could have been given a "trespassing ticket." Arresting a disabled veteran, someone with a behavior disorder under those pretenses IS EXCESSIVE AND UNLAWFUL and HAS CAUSED THE PLAINTIFF EXTREME EMOTIONAL DISTRESS AND IRREPARABLE MENTAL HARM, including the Plaintiff's car being towed and incurring medical expenses.

Due to the City of Danbury failing to train its officers, the Plaintiff estimates more than $128,000 in economic and noneconomic damages. However, if Defendants wish to "cure" the Plaintiff's injury, the Plaintiff will accept 1. A written promise to the Plaintiff and the Court, that

the City of Danbury will train its officers, and 2. the Plaintiff is willing to accept **$40,000 USD**

and an written apology from the arresting officer, Failing to cure your clients actions, and to

reach the terms of this notice by 5pm on February 1st, 2026, the Plaintiff will proceed with the

service of this action, in the interest of justice.

November 12th, 2025

Gregory D Dixon II
4901 Riely Rd
Unit 26B
Ocean Springs, MS 39564
629-257-4018
amelioratelegal@gmail.com

Exhibits 1, 1A, 2, 3, 4, 5, 6, and 7 are contained on a flash drive, included in mailing.

_D Dixon II_
_____ Rd_
_B_
_Springs  MS 39564_

TO:

_City of Danbury_
_by way of Corporation Counsel Daniel E Cronen_
_155 Deer Hill Ave_
_Danbury, CT  06810_

## IN THE UNITED STATES COURT FOR THE
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| *GREGORY D DIXON II* <br> PLAINTIFF | } <br> } <br> } | CASE NO: |
| V. | } <br> } <br> } | |
| CITY OF DANBURY, <br> DEFENDANT | } <br> } <br> } | JURY TRIAL REQUESTED |

## NOTICE OF SUIT

**Gregory D Dixon II, hereforth known as the Plaintiff**, files this notice to enforce 42

U.S.C § 1983,[1] **against the City of Danbury** (hereforth **known as defendant**) for failing to train

their police officers in the Americans with Disabilities Act, particularly dealing with residents

with "unseen disabilities." The law states that Defendants "shall be liable to the party injured in

_____ proceeding for redress" in which on November 8th,

**DO N**



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)     $
☐ Return Receipt (electronic)     $
☐ Certified Mail Restricted Delivery     $
☐ Adult Signature Required     $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage $

Total Postage and Fees $

Sent To  City of Danbury Corp Counsel, Mayr Center
Street and Apt. No., or PO Box No.  155 Deer Hill Ave
City, State, ZIP+4®  Danbury, CT 06810

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

CERTIFIED MAIL

9589 0710 5270 3288 1272 20

TO:
City of Danbury
by way of Corporation Counsel, Daniel E. Caseon
155 Deer Hill Ave
Danbury, CT 06810

FROM:
Gregory D. Dixon II
4801 Ricky Rd
Unit 2B
Ocean Springs, MS 39564



*Exhibit 2*

# Social Security Administration
# **Retirement, Survivors and Disability Insurance**
Notice of Award

Office of Central Operations
6401 Security Boulevard
Baltimore, Maryland 21235-6401
Date:  April 15, 2025
BNC#:   25MS933G13572-HA

LINDA LOWERY FOR
GREGORY DARNELL DIXON
4901 RILEY ROAD
UNIT 26B
OCEAN SPRINGS, MS 39564

GREGORY D DIXON is entitled to monthly disability benefits beginning December 2023.

We have chosen you to be his representative payee.  Therefore, you will receive his checks and use the money for his needs.

## **The Date You Became Disabled**

We found that GREGORY D DIXON became disabled under our rules on June 30, 2023.

The date we found GREGORY D DIXON disabled is different from the date he gave us on the application.

To qualify for disability benefits, GREGORY D DIXON must be disabled for five full calendar months in a row.  The first month he is entitled to benefits is December 2023.

## **What We Will Pay And When**



- You will receive $1,235.00 for April 2025 around May 14, 2025.

- After that you will receive $1,235.00 on or about the second Wednesday of each month.

- Later in this letter, we will show you how we figured these amounts.

See Next Page

*Exhibit 7*

## Danbury Emergency Department

### 24 Hospital Ave, Danbury, CT 06810

### (203) 739-7100

### Discharge Instructions (Patient)

---

**Name: DIXON, GREGORY DARNELL Current Date: 11/8/2025 22:45:24**

**DOB: 4/8/1980 MRN: DH10168010 FIN: 0011407715**

**Diagnosis: 1:Left against medical advice; 2:In police custody; 3:Anxiety; 4:Chest pain**

**Visit Date: 11/8/2025 21:12:00**

**Address: 4901 REILY ROAD UNIT 26B Ocean Springs MS 39564**

**Phone:**

**Primary Care Provider:**

**Name: Provider, NoPCP**

**Phone:**

**Emergency Department Providers:**
**Primary Physician:**
Pyka, Travis John, APRN

Nuvance offers telehealth services for your convenience. Many visits can occur via telehealth. Ask your ED doctor or physician assistant if a telehealth visit is right for you.

www.nuvancehealthvirtualvisits.org

Danbury Hospital would like to thank you for allowing us to assist you with your healthcare needs. The following includes patient education materials and information regarding your injury/illness. If you have been prescribed a pain medication, muscle relaxant, or antihistamine, please be aware that these may be sedating and you should not drive, drink alcohol, or operate heavy machinery while taking the medication. Please check with the pharmacist about these side effects when you fill your prescription.

IF THERE IS NO IMPROVEMENT IN 48 HOURS OR IF THE CONDITION WORSENS OR NEW SYMPTOMS DEVELOP, CALL YOUR DOCTOR OR RETURN TO THE EMERGENCY DEPARTMENT IMMEDIATELY.

DIXON, GREGORY DARNELL has been given the following list of follow-up instructions, prescriptions, and patient education materials:

**Follow-up Instructions:**

*Exhibit 8*

# AFTER VISIT SUMMARY
**Gregory D. Dixon II**  MRN: 1402379279
CEID: WMC-QWCK-5K4B-W5R9

**NewYork-Presbyterian**

📅 11/11/2025  📍 Hudson Valley Emergency
914-734-3300

## Instructions
Your personalized instructions can be found at the end of this document.

 **Read the attached information**
1. Anxiety Disorders: General Info (English)
2. Housing Insecurity: General Info (English)

 **Call Caring for the Hungry and Homeless of Peekskill (CHHOP) - Jan Peek House in 1 day (around 11/12/2025)**
Contact: 200 North Water Street
Peekskill New York 10566
914-736-2636

## What's Next
You currently have no upcoming appointments scheduled.

## You are allergic to the following
No active allergies

## Suicide and Crisis Lifeline

**FOR EMERGENCIES ALWAYS DIAL 911 OR GO TO YOUR NEAREST EMERGENCY ROOM**

**988 Suicide and Crisis Lifeline is available nationwide 24 hours a day- Call if you or someone you know is:**
- Feeling suicidal
- Experiencing a mental health or substance use related crisis
- Experiencing any kind of emotional distress
- Looking to connect with peer support specialists
- Seeking referrals for additional services

Counselors speak English, Spanish, and Chinese. Interpretation services are also available in over 200 languages.

<u>CALL</u> 988 - When prompted, press **1** for Veteran support, **2** for Spanish, or **3** for LGBTQI+ support if you are younger than 25 years old.

## Today's Visit
You were seen by VINCENT D. ZAYAS

**Reason for Visit**
Psych eval

**Diagnoses**
- Palpitations
- Anxious mood
- Homelessness

📋 **Imaging Tests**
ECG 12 Lead performed 2 times

💊 **Medications Given**
diazePAM (VALIUM) Last given at 3:08 AM

diphenhydrAMINE (BENADRYL) Last given at 2:57 AM

haloperidol (HALDOL) Last given at 2:56 AM

 Blood Pressure
132/88

 Weight
220 lb

 Temperature (Oral)
97.7 °F

 Pulse
68

 Respiration
18

Oxygen Saturation
98%



## Your Next Steps
📖 **Read**
☐ Read these attachments
- Anxiety Disorders: General Info (English)
- Housing Insecurity: General Info (English)

# IN THE UNITED STATES COURT FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **GREGORY D DIXON II** | } | |
| **PLAINTIFF** | } | **CASE NO:** |
| | } | |
| **V.** | } | |
| | } | |
| | } | |
| **CITY OF DANBURY,** | } | **JURY TRIAL REQUESTED** |
| **DEFENDANT** | } | |
| | } | |

## CERTIFICATE OF SERVICE

The Plaintiff, Gregory D Dixon II hereby certifies, that on November 18th, 2025, he did hereby mail, by USPS Certified Mail for filing "Plaintiff's Original Complaint", "Plaintiff's 902 Affidavit" "Exhibits 3,4,5 and 6 (video) contained on a flash drive, Exhibits 1,2,7 and 8, (documents) and this certificate of service, to the Clerk of Court located at

Brien McMahon Federal Building
United States District Court
915 Lafayette Boulevard
Bridgeport, CT 06604

Respectfully submitted,

November 18th, 2025

Gregory D Dixon II, Plaintiff Pro Se
4901 Riely Rd
Unit 26B
Ocean Springs, MS 39564
amelioratelegal@gmail.com
629-257-4018